UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BRIDGE, JR. *et al.*, | No. C-11-2521 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND GRANTING DEFENDANT'S MOTION TO STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| E*TRADE SECURITIES LLC, | |
| Defendant. | |
| _____/ | **(Docket Nos. 24, 26)** |

Defendant's motions to dismiss Plaintiffs' first amended complaint ("FAC") and to strike portions of Plaintiffs' FAC came on for hearing before the Court on October 28, 2011. Docket Nos. 24, 26. For the reasons set below, the Court **GRANTS IN PART** Defendant's motion to dismiss Plaintiffs' FAC and **GRANTS** Defendant's motion to strike.

## I. FACTUAL & PROCEDURAL BACKGROUND

Auction Rate Securities ("ARS") are long-term investments with variable interest rates that are reset through periodic Dutch auctions. FAC ¶ 4. During the auction, potential purchasers bid by stating the minimum interest rate the purchaser is willing to accept. FAC ¶ 5. The bids are ranked, and the lowest interest rate required to sell all of the ARS available for sale becomes the "clearing rate." FAC ¶ 5. The clearing rate then becomes the interest rate that applies to all of the ARS until the next auction. FAC ¶ 5.

Because of these periodic auctions, ARS were widely viewed and treated as equivalent to money market funds that offered a higher rate of return with equal liquidity. FAC ¶ 4. However, when there were insufficient bids to purchase all of the ARS offered for sale at the auction, the

auction would fail and investors would have to keep their ARS investments until the next auction.[1] FAC ¶ 6. To prevent auction failures, ARS broker-dealers and issuers participated in the auction process by placing support bids during the auctions. FAC ¶ 8. These support bids allegedly helped maintain the market for the sale and purchase of ARS, although broker-dealers and issuers had no ongoing obligation to place the support bids. FAC ¶ 8.

In 2006, the Securities and Exchange Commission ("SEC") issued an Order concerning a settlement with a number of ARS broker-dealers regarding auction practices. FAC ¶ 10; SEC Order at 2-3. The SEC found that the failure of these broker-dealers and issuers to disclose their intervention and support bids in the ARS auctions violated securities law and regulations, as this "conduct directly affected the clearing rates of the ARS [and] the prices bid and paid for ARS." FAC ¶ 10. The parties named in the order were directed to fully disclose their bidding practices to investors and issuers. FAC ¶ 10; SEC Order at 10.

Plaintiffs William Bridge, Jr. and Michele Profant had a brokerage account with Defendant E*Trade when Defendant's employees Carl Hartmann and Robert Trent advised Plaintiffs to invest in ARS in February and March 2007. FAC ¶ 14. Plaintiffs had expressed a need for absolute liquidity, as Plaintiffs needed cash to pay anticipated tax obligations. FAC ¶¶ 14, 15. In response, Hartmann recommended ARS as a safe investment with immediate liquidity from the weekly ARS auctions. FAC ¶ 15. Plaintiffs were not informed of auction intervention by broker-dealers and issuers, or the liquidity problems that would arise in the event of a failed auction. Plaintiffs were also not given any disclosure documents or written information concerning ARS. FAC ¶¶ 16, 31. Relying exclusively on the information provided by Hartmann and other Defendant personnel, Plaintiffs decided to purchase ARS. FAC ¶ 16. In March 2007, Plaintiffs learned for the first time that Defendant had acquired PIMCO California Municipal Income Fund Auction Preferred Shares, Series A, for Plaintiffs' account. FAC ¶ 17.

---

[1] When an auction fails, the issuer pays an above-market rate set by a pre-determined formula described in the ARS's disclosure documents. In re Bears, Stearns & Co., Securities Act Release No. 8684, Exchange Act Release No. 53888 at 4 (May 31, 2006), *available at* http://www.sec.gov/litigation/admin/2006/33-8684.pdf ("SEC Order").

2

In early 2008, the ARS auction system failed as broker-dealers and issuers stopped supporting the market. FAC ¶ 18. The ARS market "froze," making the ARS held by investors illiquid. FAC ¶ 18. Plaintiffs were not informed of the market collapse and the ensuing illiquidity of their ARS investment, and did not discover the collapse until Plaintiffs decided to sell their ARS investment in July 2009. FAC ¶¶ 18, 19. When Plaintiffs could not understand the PIMCO website, they contacted Hartmann. In a conference call between Hartmann, Plaintiffs, and one of Defendant's ARS experts, Plaintiffs were informed that their ARS investment was frozen and completely illiquid due to the auction failures. FAC ¶ 20. Hartmann and the ARS expert then explained that issuers had redeemed the ARS investments of many clients and that Plaintiffs' ARS investments could likewise be redeemed. FAC ¶ 21. If redeemed, the ARS investment would "disappear" from Plaintiffs' account, and Defendant would credit back Plaintiffs' $400,000 investment. FAC ¶ 21. Plaintiffs agreed to this proposal and did nothing more to investigate their losses or rights and remedies, but the redemption was never performed. FAC ¶ 22.

Based on these transactions, Plaintiffs filed this suit, alleging negligent misrepresentation, fraudulent misrepresentation, fraud, negligent supervision, and breach of contract. Plaintiffs seek money damages, rescission of the ARS investment, and punitive and exemplary damages. Defendant now moves to dismiss Plaintiffs' FAC in its entirety, arguing that Plaintiffs fail to state a claim upon which relief may be granted. Docket No. 24-1 at 5 ("Motion to Dismiss"). Defendant also moves to strike Plaintiffs' request for punitive damages. Docket No. 26 at 1 ("Motion to Strike").

## II. DISCUSSION

A. Standard of Review

In a 12(b)(6) motion to dismiss for failure to start a claim, the complaint must be construed in a light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The Court may consider facts alleged in the complaint, materials incorporated into the complaint by reference, and matters of

which the Court may take judicial notice of.[2] *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, the plaintiff must provide grounds demonstrating his entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level." *Id.* This threshold is reached when the plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

B.  Fraud and Fraudulent Misrepresentation

In California, the elements of fraud are: "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1255 (2009). In this case, Plaintiffs claims are based on Defendant's non-disclosure of essential material facts that an investor would need, expect, or want to know prior to investing. Docket No. 27 at 5 ("Opp."). An action for fraud based on concealment requires that:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-13 (1992).

Where a plaintiff alleges fraud, Federal Rule of Civil Procedure 9(b) requires that the plaintiff pleads averments of fraud with particularity. To satisfy Rule 9(b), a plaintiff must identify

---

[2] The Court takes judicial notice of the PIMCO prospectus and the SEC Order. Courts have taken judicial notice when the "documents either are referenced in the complaint or are publicly available information." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09-03529 JSW, 2011 WL 1152568, at *5 (N.D. Cal. Mar. 28, 2011). Both the PIMCO prospectus and the SEC Order are publicly available documents that Courts have taken judicial notice of. *See id.*; *In re UBS Auction Rate Sec. Litig.*, 08 Civ. 2967 (LMM), 2010 U.S. Dist. LEXIS 59024, at *23-24 (S.D.N.Y. June 10, 2010). Both documents are also incorporated into the FAC by reference.

4

the "who, what, when, and how" with sufficient specificity as to "give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted). Thus, the plaintiff must "set forth what is false or misleading about a statement, and why it is false." *Id.* (citations omitted).

### 1. Concealment or Suppression of Material Facts

Fraud based on concealment requires the concealment or suppression of material facts. Thus, when giving information, the failure to communicate other facts that materially qualify the stated facts may constitute deceit sufficient to support a claim for fraud. *Harkins v. Felder*, 150 Cal. App. 2d 528, 536 (citing CAL. CIVIL CODE §§ 1710, 1572). In the securities context, the materiality of an omission is an issue of fact; it requires a determination that "there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to buy or sell securities." *SEC v. Talbot*, 530 F.3d 1085, 1097 (9th Cir. 2008) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). "Misrepresented or omitted facts are material only if a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information made available." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 468 (6th Cir. 2011).

In the instant case, Defendant's alleged omission is based on the failure of Defendant's employees to explain that the ARS investments could lose their immediate liquidity in the event of an auction failure. FAC ¶ 32. In response to Plaintiffs' stated goals for absolute liquidity, Defendant's employees informed Plaintiffs that ARS had immediate liquidity because ARS auctions occurred every week, but allegedly failed to explain that the ARS would be illiquid if the auction failed. FAC ¶ 15. A finder of fact could determine that even the temporary loss of liquidity in the event of a single auction failure was a material fact that would have impacted Plaintiffs' investment decision, given the Plaintiffs' stated goals for absolute liquidity in order to pay an anticipated tax obligation. Furthermore, Plaintiffs have pled sufficient facts that Defendant knew that an auction failure could result in illiquidity. Both the PIMCO prospectus and the SEC Order identified the risk of illiquidity in the event of an auction failure. Docket No. 25, Exh. A at 10 (PIMCO Prospectus); SEC Order at 6 n.5. Both documents are publicly available, and it is certainly plausible that

1 Defendant was aware of the documents and their contents given their experience as a broker of ARS
2 and their participation in ARS auctions. Plaintiffs have thus alleged sufficient facts regarding
3 Defendant's failure to explain the risk of illiquidity in the event of an auction failure.

4 Plaintiffs also allege a broader omission in that Defendant failed to explain "that ARS
5 depended for their liquidity on a manipulated and artificial market, and that broker-dealers and other
6 issuers had no obligation to make support bids in any auction, and could cease to do so at any time."
7 FAC ¶ 31. In *Defer LP v. Raymond James Financial, Inc.*, the Court found that a trier of fact could
8 find that the fact that ARS was only liquid because of routine intervention in auctions was important
9 to a reasonable investor in deciding whether to purchase ARS. 08 Civ. 3449 (LAK), 2010 U.S. Dist.
10 LEXIS 91856, at *36 (S.D.N.Y. Sep. 2, 2010). At this juncture, the Court finds that there is a
11 plausible claim that Defendant knew that the ARS auctions were dependent on intervention by
12 issuers and brokers based on the SEC Order, the PIMCO prospectus, and Defendant's experience in
13 the ARS market. Like in *Defer LP*, failure to explain the effect of this intervention on ARS liquidity
14 could have affected Plaintiffs' decision to invest in the ARS. Thus, Plaintiffs have pled sufficient
15 facts demonstrating that Defendant concealed or suppressed facts that would have been material to
16 Plaintiffs' investment decision.

17       2. <u>Duty to Disclose the Material Fact</u>

18 Plaintiffs have pled sufficient facts to show that Defendant had a duty to disclose the material
19 fact. Plaintiffs argue that they are in a fiduciary relationship with Defendant that creates a duty to
20 disclose a material fact because Defendant acted as Plaintiffs' broker by giving Plaintiffs investment
21 advice and choosing the ARS that it then purchased on Plaintiffs' behalf. FAC ¶¶ 14, 16, 17.
22 Defendant also refers to itself as Plaintiffs' broker, although it denies that a fiduciary relationship
23 existed between the parties. Motion to Dismiss at 3, 13; Reply at 3 n.1.

24 California recognizes a fiduciary relationship between a stock broker and a customer, as the
25 stock broker serves as the customer's agent. *Black v. Shearson, Hammill & Co.*, 266 Cal. App. 2d
26 362, 367 (1968); *Duffy v. Cavalier*, 215 Cal. App. 3d 1517, 1531 (1989) ("The relationship between
27 broker and principal is fiduciary in nature and imposes on the broker the duty of acting in the highest
28 good faith toward the principal. With respect to stockbrokers it is recognized, 'The duties of the

broker, being fiduciary in character, must be exercised with the utmost good faith and integrity.'"). Based on this fiduciary duty, California courts recognize a duty to disclose material facts. *Black*, 266 Cal. App. 2d at 367 ("Intentional failure to disclose a material fact is actionable fraud if there is a fiduciary relationship giving rise to disclose it. A stock broker owes such duty to his customers"); *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 803 F.3d 454, 460 (9th Cir. 1986) (finding that the defendant, the plaintiff's broker, had a duty to explain the nature of short-selling "in a way that [the plaintiff] could understand what she was getting into."). As Plaintiffs' broker, Defendant likewise owed a duty to Plaintiffs to disclose material facts regarding Plaintiffs' investments.

Even absent a fiduciary duty, Defendant still had a duty to disclose the illiquidity risks when it told Plaintiffs that the ARS were a liquid investment. In California, "[r]egardless of whether one is under a duty to speak or disclose facts, one who does speak must speak the whole truth, and not by partial suppression or concealment make the utterance untruthful and misleading." *Am. Trust Co. v. Cal. W. States Life Ins. Co.*, 15 Cal. 2d 42, 65 (1940). Defendant responded to Plaintiffs' request for liquidity by recommending ARS without qualifying its assertion with the fact that the auctions could fail, rendering an ARS investment illiquid. FAC ¶¶ 15, 31. Given Plaintiffs' stated goal of immediate liquidity to which Defendant's responded by recommending an ARS investment, Defendant had a duty to disclose the possibility of an auction failure and its impact on ARS liquidity.

3. Concealment with an Intent to Deceive or Defraud

Plaintiffs have pled sufficient facts to show that Defendant acted with an intent to deceive or defraud. In California, the requisite intent for concealment or suppression of a material fact "need not be to defraud, but merely to cause another to alter his position to his risk." *Nathanson v. Murphy*, 132 Cal. App. 2d 363, 369 (1955). Thus, a defendant's intent to deceive or defraud is satisfied by a showing that the defendant made a representation with knowledge that the plaintiff would act in reliance thereon. *Id.* at 368.

Under Rule 9(b), intent may be alleged generally. Here, Plaintiffs have alleged that the misrepresentations and omissions were intentional, and made for the purpose of inducing Plaintiffs to rely on them and invest in ARS. FAC ¶ 40. Plaintiffs further allege that the misrepresentations

7

were made to allow Defendant to market and sell ARS products and inventory. FAC ¶ 40. Plaintiffs thus show an intent to deceive by alleging that Defendant knew that Plaintiffs wanted liquidity and informed Plaintiffs that ARS were liquid without disclosing the risk of illiquidity in order to cause Plaintiffs to invest in ARS.

Defendant argues that Plaintiffs have failed to demonstrate scienter, but California does not require scienter in common law actions for fraud based on concealment or suppression of a material fact. While California does require scienter in common law actions for fraud or deceit, it treats scienter as an element separate from the intent to deceive and induce reliance. *See Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011) ("The well-established common law elements of fraud which give rise to the tort action for deceit are . . . (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance . . . ."). Plaintiffs are not required to demonstrate scienter, as California courts have found it sufficient to demonstrate that the omission was made with an intent to induce reliance. *See Nathanson*, 132 Cal. App. 2d at 368 ("To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an assertion as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true and made with intent to induce the recipient to alter his position to his injury or his risk"). The Court finds that Plaintiffs have pled sufficient facts alleging an intent to deceive or defraud on the part of Defendant.

    4.    <u>Plaintiffs' Unawareness of the Facts</u>

Plaintiffs have pled sufficient facts regarding their unawareness of the possibility of an auction failure and its impact on their ARS investment's liquidity. Plaintiffs allege that they are unsophisticated investors who were reliant on Defendant for information on their investments. FAC ¶¶ 1, 32. Defendant never explained that the ARS could become illiquid in the event of an auction failure. FAC ¶ 16. There is no suggestion that Plaintiffs were at any time aware that ARS auctions could fail and render their investment illiquid prior to Plaintiffs' discussion with Hartmann and the ARS expert in July 2009.

Instead, Defendant argues that Plaintiffs are charged with knowledge of the illiquidity risks because the PIMCO prospectus and SEC Order are publicly available documents that disclosed such

8

risks. Motion to Dismiss at 8-10. However, California does not impose a duty to investigate even when there is an opportunity to investigate. 5 Witkin, *Torts* § 813 (10th ed. 2005); "Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the representation was intentional rather than negligent. Nor is the plaintiff held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable man." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239-40 (1995); *Winn v. McCulloch Corp.*, 60 Cal. App. 3d 663, 671 (1976) ("Only if the conduct of the plaintiff in relying upon a misrepresentation in the light of his own intelligence and information was manifestly unreasonable will he be denied recovery.").

Cases cited by Defendant do not alter the rule that Plaintiffs have no duty to investigate, as Defendant's cases were based on a claim for market manipulation. *In re UBS Auction Rate Sec. Litig.*, 08 Civ. 2967 (LMM), 2010 U.S. Dist. LEXIS 59024, at *69 (S.D.N.Y. June 10, 2010); *In re Bank of Am. Corp. Auction Rate Sec. (ARS) Mktg. Litig.*, No. 09-md-02014 JSW, 2011 U.S. Dist. LEXIS 18208, at *38 (N.D. Cal. Feb. 24, 2011). In a market manipulation claim, the plaintiff argues "that an alleged manipulator engaged in market activity aimed at deceiving investors as to how other market participants have valued a security." *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 390 (S.D.N.Y. 2010). Any damage to the plaintiff must result from the plaintiff's reliance on the assumption of an efficient market free of manipulation when the market is not in fact free of manipulation. *Id.* at 393; *In re UBS Auction Rate Sec. Litig.*, 2010 U.S. Dist. LEXIS 59024, at *68. Applying market manipulation claim to ARS, the courts have held that there is no reasonable reliance on an assumption of an efficient ARS market free of intervention because the SEC Order disclosed that there is in fact intervention. *In re UBS Auction Rate Sec. Lit.*, 2010 U.S. Dist. LEXIS 59024, at *70. An efficient market incorporates all publicly available information, and the ARS market would have incorporated the SEC Order and the ARS prospectuses for purposes of a market manipulation claim. *In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d at 396. A plaintiff is therefore precluded from basing a market manipulation claim on manipulative conduct that is already disclosed in publicly available information because the market would have already considered that information in valuing the stock. *Id.*

9

However that imputed knowledge about the market does not apply to claims of fraud and omission. In *Defer LP*, the plaintiff brought claims based on the defendants' failure to disclose the risk of ARS illiquidity in the event of an auction failure. 2010 U.S. Dist. LEXIS 91856, at *39. There, the court rejected the defendants' argument that publicly available information would have disclosed these illiquidity risks to the plaintiff because "there is no indication that this information ever was communicated to [the plaintiff] before he purchased his ARS." *Id.* Thus, even if the publicly available information did disclose the risks, they did not affect the plaintiff's central allegation that "[the defendant], through its financial advisor, told [the plaintiff] that ARS were safe, liquid investments when, in truth, they were not." *Id.*

Plaintiffs herein assert fraud, not market manipulation. Like the plaintiff in *Defer LP*, Plaintiffs were told that ARS were liquid investments despite the possibility of an auction failure resulting in illiquidity. Plaintiffs were not given the prospectus or the SEC Order, and cannot be charged with knowledge of these documents because they did not have an independent duty to gather these documents. The Court finds that Plaintiffs have pled sufficient facts alleging that Plaintiffs were unaware of the potential for auction failures and its result on the liquidity of Plaintiffs' ARS investments.

### 5. Resulting Damages

Finally, Plaintiffs have pled sufficient facts that they were harmed as a result of the alleged omissions. Courts have recognized loss of liquidity as an immediate and independent injury, as an illiquid asset is worth less than a liquid one. *In re UAL Corp.*, 412 F.3d 775, 778 (7th Cir. 2005); *In re Merrill Lynch Auction Rate Sec. Litig.*, 09 MD 2030 (LAP), 2011 U.S. Dist. LEXIS 35363, at *35-36. Plaintiffs can also show that this loss of liquidity resulted from the suppression or concealment of material facts regarding risks to ARS liquidity, as Plaintiffs would not have invested if they had known that the ARS were not in fact completely liquid. FAC ¶¶ 40, 42.

### 6. Conclusion

The Court finds that Plaintiffs have stated a claim for fraud and fraudulent misrepresentation based on Defendant's failure to tell Plaintiffs of the risks of illiquidity to ARS investments from auction failures.

C.  <u>Negligent Misrepresentation</u>

Plaintiffs also bring a claim for negligent misrepresentation. Unlike fraud or fraudulent misrepresentation, negligent misrepresentation "does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." *Conroy*, 45 Cal. 4th at 1255. A claim for negligent misrepresentation requires: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Apollo Capital Fund, LLC v. Roth Capital Partners*, 158 Cal. App. 4th 226, 243 (2007). For a claim of negligent misrepresentation, "a positive assertion is required; an omission or an implied assertion or representation is not sufficient." *Id.*

In the instant case, Plaintiffs claim is based on Defendant's statement that ARS were reliable, short term, liquid investments. This is a material statement, given that Plaintiffs had expressed a need for absolute liquidity and relied upon Defendant's employees to recommend an investment vehicle that satisfied their goals as explained to the employees. FAC ¶ 15. Based on the SEC Order and the PIMCO prospectus, as well as Defendant's experience and knowledge of the ARS market, Defendant's employees did not have a reasonable basis for stating that the ARS were absolutely liquid. For example, the PIMCO prospectus discussed the possibility of an auction failure that could prevent Plaintiffs from selling their ARS. PIMCO Prospectus at 10. This statement was made to induce Plaintiffs' reliance on the fact that ARS were liquid, and resulted in Plaintiffs investing in ARS. FAC ¶ 15, 16. Plaintiffs' investment in the ARS has resulted in Plaintiffs' possessing illiquid investments when Plaintiffs had sought absolute liquidity. FAC ¶ 15, 20. Plaintiffs have stated a claim for negligent misrepresentation.

D.  <u>Negligent Supervision</u>

To bring a claim for negligent supervision, "a plaintiff must allege all of the general elements of negligence, including establishing that the employer's breach of the duty to use due care was the proximate or legal cause of the resulting injury." *Costello v. FedEx Kinko's Office & Print Servs., Inc.*, Case No. CV 08-3045 CAS, 2008 U.S. Dist. LEXIS 109901, at *11 (C.D. Cal. Oct. 27, 2008). A claim for negligence requires that the plaintiff show a breach of a legal duty to use due care that

11

1  resulted in injury. *Truong v. Nguyen*, 156 Cal. App. 4th 865, 875 (2007). Here, Plaintiffs identify
2  two instances of negligent supervision: (1) Defendant's alleged failure to enter into a customer
3  agreement with Plaintiffs or otherwise obtain sufficient information about Plaintiffs' investment
4  goals, and (2) Defendant's failure to disclose information about the ARS markets.

5        1.      <u>Failure to Enter into a Customer Agreement</u>

6  Plaintiffs first allege that Defendant failed to take steps required to "know-thy-customer,"
7  such as by obtaining a customer agreement with Plaintiffs prior to the purchase of ARS for
8  Plaintiffs' account. FAC ¶¶ 25(a)-(b). Under this customer agreement, Defendant's employees
9  would have obtained information concerning Plaintiffs' investing goals, financial status, risk
10 tolerance, and other information related to determining the suitability of an investment for an
11 investor. FAC ¶ 26.

12 Plaintiffs do not allege that Defendant had a legal duty to enter into a customer agreement.
13 Plaintiffs have alleged that Defendant had a duty to execute the customer agreement based on
14 Defendant's own internal policies and procedures, but this does not create a legal duty. Opp. at 16.
15 Plaintiffs also point to rules by the Financial Industry Regulatory Authority, an independent
16 regulator for securities firms doing business in the United States. *About FINRA*, FIN. INDUS.
17 REGULATORY AUTH., http://www.finra.org/AboutFINRA/index.htm. Although Defendant is a
18 member of FINRA, Plaintiffs again do not allege that a violation of FINRA's rules is actionable
19 under the law. Furthermore, Plaintiffs identify NASD 2310 as creating a duty to "know-thy-
20 customer," but this rule only states that a member shall make *reasonable* efforts to obtain
21 information. FAC ¶ 25.

22 Even if Defendant had a duty to execute a customer agreement, Plaintiffs have not
23 demonstrated that the failure to execute a customer agreement caused Plaintiffs' harm. Even without
24 the customer agreement, Plaintiffs expressed their investment goals to Defendant's employees in
25 February 2007, when Plaintiffs spoke to Hartmann and another Defendant employee about their
26 investments. FAC ¶ 15. During this conversation, Plaintiffs stated their goals for absolute liquidity.
27 FAC ¶ 15. This goal of liquidity is the main issue of the case, as Plaintiffs have alleged that ARS
28 was not a reasonable investment given their goal for liquidity. FAC ¶ 39. Given that Defendant

1 already knew that Plaintiffs' investment goals were liquidity, there is no indication of what other
2 information the customer agreement would have given Defendant that might have affected the
3 investment decision. Absent allegations of how the failure to obtain a customer agreement or other
4 customer information resulted in Plaintiffs' harm, when Plaintiffs had already expressed their
5 liquidity goals to Defendant's employees, Plaintiffs cannot show that there was negligent
6 supervision based on the failure to obtain sufficient customer information.

       2.       <u>Failure to Supervise Employee Actions Relating to Plaintiffs' ARS Investment</u>

8 Plaintiffs also allege that Defendant's employees failed to explain the illiquidity risks in
9 recommending that Plaintiffs invest in ARS, and that Defendant's employees misled Plaintiffs in
10 suggesting that their ARS investment could be redeemed. However, Plaintiffs again rely on rules
11 promulgated by FINRA as placing a duty and obligation on Defendant to supervise its employees.
12 FAC ¶ 44. Plaintiffs do not allege that these rules have a legally binding effect on Defendant, or that
13 a violation of these rules creates a legal cause of action against Defendant.

14 Furthermore, Plaintiffs have failed to allege any specific actions or failures to act on the part
15 of the Defendant. In *Costello v. FedEx Kinko's Office & Print Services, Inc.*, the Court rejected a
16 claim based on negligent supervision where the plaintiffs failed to identify specific acts or failures
17 on the part of the employer. CV 09-3045 CAS (VBKx), 2008 U.S. Dist. LEXIS 109901, at *12
18 (C.D. Cal. Oct. 27, 2008). In their briefing, Plaintiffs argue that Defendant failed to act pursuant to a
19 duty when it did not provide a copy of the PIMCO prospectus to its employees prior to those
20 employees soliciting Plaintiffs' business. Opp. at 17. Even if Defendant had a duty to provide the
21 prospectus to its employees, Plaintiffs fail to plead any facts in their FAC suggesting that Defendant
22 did not in fact provide that information to its employees. Instead, the FAC focuses solely on the
23 failure to provide the information to Plaintiffs. Without allegations that the Defendant acted
24 contrary to a duty and the specific action or failure to perform that duty, Plaintiffs fail to state a
25 claim for negligent supervision.

26 E.    <u>Breach of Contract</u>

27 Plaintiffs allege that Defendant breached a contract to redeem Plaintiffs' ARS purchases.
28 FAC ¶ 48. Generally, a breach of contract claim requires "(1) the contract, (2) plaintiff's

13

1 performance or excuse of performance, (3) defendant's breach, and (4) the resulting damages to
2 plaintiff." *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968).

3 Defendant argues that Defendant and Plaintiffs never entered into a contract to have
4 Defendant redeem Plaintiffs' ARS purchases because there was no consideration for Defendant's
5 alleged promise to redeem. Plaintiffs have alleged that based on Defendant's promise to redeem the
6 ARS purchase, Plaintiffs took no further actions to investigate or recover their losses, and did not
7 make any further demands on Defendant. FAC ¶ 49. Thus, Plaintiffs' putative consideration for the
8 promise was their forbearance because they did not exercise their right to send a written complaint
9 or claim to either Defendant or a regulatory body, and they did not file a lawsuit based on their
10 reliance on Defendant's promise. California law recognizes forbearance of a legal right as sufficient
11 consideration for a contract. *Krobizstch v. Middleton*, 72 Cal. App. 2d 804, 809 (1948) ("It is settled
12 law in California that any suspension or forbearance of a legal right constitutes a sufficient
13 consideration.").

14 However, Plaintiffs have failed to plead facts demonstrating that Plaintiffs *exchanged* its
15 forbearance for Defendant's promise to redeem, thus creating a contract. The FAC states that
16 "Hartmann and other [Defendant] personnel specifically promised that ARS would[3] be redeemed in
17 full, that the investment would be deleted from Plaintiffs' account, and that [Defendant] would credit
18 Plaintiffs' account for the full $400,000 value of the ARS investment." FAC ¶ 48. Plaintiffs agreed
19 to this proposal and, "rel[ying] on Defendant's assurance and representations," did nothing more to
20 investigate their rights or remedies. FAC ¶ 22. The FAC does not allege that they agreed to give up
21 their right to take further actions against Defendant in exchange for Defendant's promise to redeem
22 the ARS investment. At most, the FAC suggests that Plaintiffs relied on Defendant's representations
23 that their ARS investment could be redeemed, and as a result of that reliance, they believed they did
24 not have to do anything further because their problems would be taken care of by Defendant.

---

[3] The Court observes that earlier in the FAC, Plaintiffs only state that Hartmann and the ARS expert "promised Plaintiffs that their ARS investment *could* . . . be redeemed, such that Plaintiffs would receive a return of the full amount of their investment." FAC ¶ 21 (emphasis added).

1   Thus, while forbearance may constitute sufficient consideration to form a contract, there is
2 no indication in the instant case that Plaintiffs actually offered their forbearance as consideration for
3 Defendant's promise to redeem the ARS investment. Plaintiffs do not offer any facts that indicate
4 that their decision not to pursue other rights or remedies against Defendant arose from a contract,
5 rather than Plaintiffs' reliance on Defendant's promise and their belief that they did not need to act.
6 Without a showing that there was an agreement between Plaintiffs and Defendant for Defendant to
7 redeem the investment if Plaintiffs took no further action against Defendant, there is no contract
8 between the parties. Without a contract, Plaintiffs cannot state a claim for breach of contract.

F.   <u>Rescission</u>

Finally, Plaintiffs allege that they are entitled to rescission under California Civil Code § 1689(b)(1). Under § 1689(b)(1), a party may rescind a contract if consent was obtained through duress, menace, fraud, or undue influence. As discussed above, Plaintiffs have pled sufficient facts to support a claim for fraud.

Defendant argues that Plaintiffs cannot sue for rescission of the contract to purchase ARS because Plaintiffs did not purchase their ARS from Defendant. Instead, Defendant acted as Plaintiffs' broker and purchased the ARS on Plaintiffs' behalf. The money Plaintiffs paid for the ARS went to the auction seller, not to Defendant. Thus, the contract Plaintiffs seek to rescind is between Plaintiffs and PIMCO, not Plaintiffs and Defendant. Motion to Dismiss at 13. Although Plaintiffs raise the possibility that Defendant *might* have sold the ARS to Plaintiffs in their opposition brief, such speculation is insufficient to support a claim for rescission when Plaintiffs have made no such allegations in the FAC. Instead, the FAC alleges that Defendant purchased ARS for Plaintiffs, rather than sold Defendant's own ARS to Plaintiff. FAC ¶ 16 ("Plaintiffs were, in fact, unaware of the precise type of the ARS investment product that [Defendant] was recommending to them until [Defendant] purchased it for Plaintiffs' account."). Without any allegations that Defendant actually sold the ARS to Plaintiffs, rather than purchasing the ARS on behalf of Plaintiffs, a rescission of the contract would have to be between PIMCO and Plaintiffs, not Defendant and Plaintiffs. The Court finds that because Plaintiffs allege that Defendant acted as an intermediary for Plaintiffs, rather than the seller of the ARS to Plaintiffs, Plaintiffs fail to state a claim for rescission.

15

G. <u>Punitive Damages</u>

Defendant also moves to strike Plaintiffs' request for punitive damages. Under California Civil Code § 3294, a party may request punitive damages where the defendant acts with malice, oppression, or fraud. As discussed above, Plaintiffs have pled sufficient facts to support a claim for fraud based on Defendant's failure to explain the illiquidity risks of ARS.

However, under California Civil Code § 3294(b), an employer is not liable for punitive damages based on the acts of an employee unless the employer has advance notice of the employee's unfitness and disregarded that risk, or authorized or ratified the wrongful conduct. "Generally, an employer is not liable in punitive damages for the fraudulent acts of its agents or employees unless the employer has authorized the acts." *Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 549 (1971). Two exceptions to this general rule exist where the employer knowingly ratifies the fraud after its commission, or where the fraud was committed by an employee acting in a managerial capacity. *Id.* Plaintiffs have failed to allege sufficient facts indicating that Defendant ratified the fraud committed by Defendant's employees, or that Hartmann or other employees to whom Plaintiffs spoke were acting in a managerial capacity. At most, Plaintiffs have alleged that Defendant was negligent in its supervision of its employees, but has not pled facts suggesting that Defendant ratified its employees' acts or that Defendant had prior notice of the employees' unfitness. Without such a showing, punitive damages against Defendant on the basis of its employees' actions is not warranted.

///
///
///
///
///
///
///
///
///

16

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claims for: (1) negligent supervision; (2) breach of contract; and (3) rescission. The Court also **GRANTS** Defendant's motion to strike Plaintiffs' claim for punitive and exemplary damages. These claims are dismissed without prejudice, and Plaintiffs have leave to amend within 60 days. The Court **DENIES** Defendant's motion to dismiss Plaintiffs' remaining claims.

This order disposes of Docket Nos. 24 and 26.

IT IS SO ORDERED.

Dated: November 9, 2011

_____
EDWARD M. CHEN
United States District Judge