UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BRIDGE, JR., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> E*TRADE SECURITIES LLC, <br><br> Defendant. | No. C-11-2521 EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR ORDER DIRECTING EXPUNGEMENT OF CARL HARTMANN'S CENTRAL REGISTRATION DEPOSITORY RECORDS** <br><br> **(Docket No. 44)** |

      Plaintiffs William Bridge Jr. and Michele Profant filed suit against Defendant E*TRADE Securities LLC ("E*TRADE") seeking damages for E*TRADE's sale of Auction Rate Securities ("ARS") to Plaintiffs. Although the parties reached a settlement in 2011, E*TRADE now seeks expungement of the allegations brought in the case against its employee Carl Hartmann pursuant to Rule 2080 of the Financial Industry Regulatory Authority, Inc. ("FINRA"). Currently pending before the Court is E*TRADE's Motion for Order Directing Expungement of Carl Hartmann's Central Registration Depository Records. E*TRADE contends that the allegations brought against Hartmann are clearly erroneous and that Hartmann had no involvement in the ARS sales at issue in the case. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument, and **VACATES** the hearing. Having considered Defendant's unopposed brief and accompanying submissions, the Court hereby **GRANTS** E*TRADE's motion.

///

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND

FINRA is a self-regulatory organization ("SRO") registered with the Securities Exchange Commission ("SEC") as a national securities association.[1] *See Fiero v. Financial Indus. Regulatory, Auth., Inc.,* 660 F.3d 569, 571 (2d Cir. 2011). "It is 'responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation ....'" *Sacks v. SEC,* 648 F.3d 945, 948 (9th Cir. 2011).

Under the Securities Exchange Act, one of FINRA's duties is to "establish and maintain a system for collecting and retaining registration information" about registered representatives such as Mr. Hartmann. 15 U.S.C. § 78o-3(i)(1)(A). "Registration information" includes information about "disciplinary actions, regulatory, judicial, and arbitration proceedings." *Id.* § 78o – 3(i)(5). FINRA, along with securities commissions from all 50 states, developed the Central Registration Depository ("CRD") for the purposes of storing "information about regulatory, enforcement and arbitration actions taken against registered representatives and other securities personnel." *See In re Lickiss*, No. C-11-1986 EMC, 2011 WL 2471022, at *1 (N.D. Cal. Jun. 22, 2011).

FINRA has promulgated a rule related to the process of expungement – *i.e.,* FINRA Rule 2080. Under the Securities Exchange Act, FINRA is permitted to "propose rules aimed at governing its member firms and associated individuals. The proposed rules are subject to approval by the Securities and Exchange Commission's Division of Market Regulation." *Sacks,* 648 F.3d at 948. Under FINRA Rule 2080(a), "[m]embers or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement...." FINRA Rule 2080(a).[2] FINRA Rule 2080(b), in turn, essentially requires that a member or person seeking expungement notify FINRA of

---

[1] FINRA was formerly known as the National Association of Securities Dealers, Inc. ("NASD"). *See Dailey v. Legg Mason Wood Walker, Inc.*, No. 08-1577, 2009 WL 4782151, at *1 (W.D. Pa. Dec. 8, 2009).

[2] FINRA Rule 2080 was approved by the SEC on May 27, 2009. SEC Release No. 34-59987.

such. Upon notification, FINRA has, in essence, the opportunity to consider whether it should participate in the judicial proceeding. Rule 2080(b) provides in full as follows:

> (b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below.
>
> (1) Upon request, FINRA may waive the obligation to name FINRA as a party if FINRA determines that the expungement relief is based on affirmative judicial or arbitral findings that:
>
> (A) the claim, allegation or information is factually impossible or clearly erroneous; the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or the claim, allegation or information is false.
>
> (2) If the expungement relief is based on judicial or arbitral findings other than those described above, FINRA, in its sole discretion and under extraordinary circumstances, also may waive the obligation to name FINRA as a party if it determines that:
>
> (A) the expungement relief and accompanying findings on which it is based are meritorious; and the expungement would have no material adverse effect on investor protection, the integrity of the CRD system or regulatory requirements.

FINRA Rule 2080(b).

In the present action, Plaintiffs' claims against E*TRADE originated from a business transaction regarding E*TRADE's sale of ARS to Plaintiffs.[3] Plaintiffs originally filed suit against E*TRADE in March 2011 in Alameda County Superior Court, after which E*TRADE properly removed the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(B) on the basis of diversity jurisdiction. Compl., Docket No. 1; Notice of Removal of Action Under 28 U.S.C § 1441(B), Docket No. 1. In August 2011, Plaintiffs filed their First Amended Complaint ("FAC") that alleged six causes of action against E*TRADE and sought

---

[3] A more extensive summary of the underlying facts of Plaintiffs action against E*TRADE can be found in Order Granting in Part Def.'s Mot. to Dismiss and Granting Def.'s Mot. to Strike, Docket No. 34.

monetary damages, including a request for punitive damages.[4] FAC, Docket No. 16, at 1. In response, E*TRADE filed a Motion to Dismiss all of Plaintiffs' claims, Docket No. 24, and a Motion to Strike in regards to Plaintiffs allegations for punitive damages, Docket No. 26. In November 2011, this Court granted E*TRADE's Motion to Strike and granted in part E*TRADE's Motion to Dismiss in regards to the claims of negligent supervision, breach of contract, and rescission. Order Granting in Part Def.'s Mot. to Dismiss Pls.' First Am. Compl. And Granting Def.'s Mot. to Strike Portions of Pls.' First Am. Compl., Docket No. 34. Following the Court's ruling, the parties came to a settlement agreement in December 2011, in which Plaintiffs agreed to dismiss all remaining claims against E*TRADE. Settlement Agreement and Release, Docket No. 35, at 2.

In the settlement agreement, Plaintiffs acknowledged that E*TRADE may seek expungement of the allegations made against itself or its employees filed by FINRA in the CRD. *Id*. Plaintiffs also stipulated to allowing E*TRADE to move for partial Summary Judgment without opposition. Stipulation Regarding Resolution of E*TRADE's Mot. for Partial Summ. J., Docket No. 41, at 1. Both parties acknowledged that the stipulation was for purposes of obtaining a judicial finding that the allegations against Hartmann were erroneous and that Hartmann did not participate in sales of ARS to Plaintiffs. *Id*. at 1-2. E*TRADE further specified that such a finding would not be used against Plaintiffs, but rather only to obtain a waiver of the obligation to name FINRA as a party to the expungement proceeding and as a basis for an order from this Court expunging Hartmann's record. *Id*. at 2.

In April 2012, this Court granted E*TRADE's motion for partial summary judgment. Order Granting Def.'s Mot. for Partial Summ. J., Docket No. 43. This Court found that "undisputed evidence" indicated that Hartmann did not recommend nor sell ARS to Plaintiffs. *Id*. at 1. Consequently, this Court held that "(1) the allegations against Mr. Hartmann are clearly erroneous and (2) that Mr. Hartmann was not involved in the alleged investment related sales practice violation

---

[4] Plaintiff's First Amended Complaint brought causes of action against E*TRADE for (1) Negligent Misrepresentation; (2) Fraudulent Misrepresentation; (3) Fraud; (4) Negligent Supervision; (5) Breach of Contract; and (6) Rescission. FAC, Docket No. 16, at 1.

4

complained of by Plaintiffs." *Id*. Following the Court's Order and pursuant to E*TRADE's request, FINRA has waived its right to appear in this matter and no opposition to E*TRADE's motion has been filed with this Court. *See* Def.'s Reply for Mot. for Order Directing Expungement of Carl Hartmann's Central Record Depository Records, Docket No. 45.

Now before the Court is E*TRADE's motion for an order directing expungement of Hartmann's CRD records.

## II. DISCUSSION

### A. Legal Standard

FINRA Rule 2080 does not provide any substantive legal standard in order to ascertain whether expungement of an individual's record from the CRD is appropriate or required. *See In re Lickiss*, No. C-11-1986 EMC, 2011 WL 2471022, at *1 (N.D. Cal. Jun. 22, 2011); *Reinking v. Financial Industry Regulatory Authority*, No. A-11-CA-813-§, at *12 (W.D. Tex. Dec. 1, 2011).[5] Although case law regarding the standard for CRD expungement is scarce, E*TRADE cites *Reinking v. Financial Industry Regulatory Authority*, No. A-11-CA-813-§, at *12 (W.D. Tex. Dec. 1, 2011), where the court found that the defendant's CRD record should be expunged after parties had reached a settlement of their dispute and the plaintiffs did not oppose expungement. *See Reinking*, No. A-11-CA-813-§, at *1-3. The court held that FINRA Rule 2080, providing the standard as to when FINRA may waive its right to appear, *could* also be applied to determine when expungement was warranted. *See Reinking*, No. A-11-CA-813-§, at *7; *see also Sawyer v. Horwitz & Assocs., Inc.*, No. 11-CV-1604-LAB-JMA, 2012 WL 296996, at *2 (S.D. Cal. Jan. 31, 2012) (holding that denial of expungement by a FINRA arbitration panel based on application of Rule 2080 was proper). However, the court declined to adopt the standard of Rule 2080, finding that its standard was "probably too exacting for a merits determination." *Id*. at *8. The court observed there are situations, including the matter then in front of it, where the standard of Rule 2080 would not warrant FINRA from waiving its right to appear, but expungement would nonetheless be appropriate. *Id*. at *9.

---

[5] The *Reinking* decision is provided by E*TRADE in its motion attached to the Declaration of Monica N. Dournaee as Exhibit A. *See* Docket No. 44, Ex. A.

1    Instead, the court turned to the language found in an SEC approval of NASD Rule 2130. *Id*.
2 at *8. The expungement procedures set forth by NASD Rule 2130 are identical to those found in
3 FINRA Rule 2080(b)(1)(A)[6] as NASD Rule 2130 was adopted by Rule 2080 "without material
4 change." *See* SEC Release No. 34-59987. The SEC held that Rule 2130 "strikes the appropriate
5 balance between permitting members and associated persons to remove information from the CRD
6 system that holds no regulatory value, while at the same time preserving information on the CRD
7 system that is valuable to investors and regulators." *See Reinking*, No. A-11-CA-813-§, at *8 (citing
8 SEC Release No. 34-48933, 68 Fed. Reg. at 74672). Consequently, the standard used by the
9 *Reinking* court was predicated upon whether or not allegations' continued inclusion in the CRD had
10 "regulatory value." *See Reinking*, No. A-11-CA-813-§, at *8 ("the Court will follow the policy
11 guidance given by the SEC, and finds expungement will be merited in this case if the Arevalo
12 Dispute holds no regulatory value meriting its continued inclusion in the CRD."). Applying that
13 standard, the court found in *Reinking* that the allegations were "wholly frivolous," and therefore that
14 no regulatory value existed to continue their inclusion in the CRD. *Id*.

15 B.   Expungement

16    The legal standard for CRD expungement appears to be a novel issue in this District.
17 E*TRADE proposes that the Court adopt the standard for expungement predicated upon the SEC's
18 guidance and relied upon by the court in *Reinking*. The Court agrees.

19    Hartmann's case easily meets the "regulatory purpose" standard found in *Reinking*. Given
20 the allegations against Hartmann have been established as false, there is no regulatory value in
21 keeping records of such inaccurate allegations in the CRD. *See Reinking*, No. A-11-CA-813-§, at
22 *12. Indeed, maintaining records of false allegations against non-culpable individuals would dilute
23 the value of the CRD as a useful source of information. *See* SEC Release No. 34-48933, 68 Fed.

---

[6] FINRA Rule 2080(b)(1)(A) states that FINRA may waive its right to appear where "the claim, allegation or information is factually impossible or clearly erroneous; the registered person was not involved in the alleged investment-related sales practice violation, forgery, theft, misappropriation or conversion of funds; or the claim, allegation or information is false." FINRA Rule 2080(b).

Reg. at 73672 ("The Commission . . . agrees that expungement of inaccurate information from the CRD system is crucial to the system's value.")

Moreover, even under the more "exacting" standard of Rule 2080(b), Mr. Hartmann's case warrants expungement of his record from the CRD. Hartmann's case satisfies the standard of FINRA Rule 2080(b)(1)(A) because the Court has already determined the allegations against Hartmann are "clearly erroneous" and Hartmann was not involved in "the alleged investment-related sales practice violation." *See* FINRA Rule 2080(b)(1)(A). *See In the Matter of Arbitration Between Carol Page v. Brookstreet Securities Corp.*, 2010 WL 3072237, at *8 (FINRA Aug. 25, 2010) (the defendant's role primarily involved sales and marketing and had no involvement with the "investment-related sales practice violation" at issue, thus warranting expungement).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** E*TRADE's Motion for Order Directing Expungement of Carl Hartmann's Central Registration Depository Records.

This Order disposes of Docket No. 44.

IT IS SO ORDERED.

Dated: August 7, 2012

_____
EDWARD M. CHEN
United States District Judge